FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/6/2019 11:48 AM
KATHLEEN VIGIL CLERK OF THE COURT
Francine Lobato

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

LEE HUNT, as the personal representative
of the wrongful death estate of SALLYANN
ULIBARRI, and DIANE LOPEZ, as the legal
guardian of G. ULIBARRI, a minor,

          Plaintiffs,

v.

THE SIEGEL GROUP NEVADA,
INC., a Nevada corporation,75
HOTEL CIRCLE HOLDINGS,
LLC d/b/a SIEGEL SUITES NEW
MEXICO, LLC, a Nevada limited
liability company, and TAMMY
KIMBALL,

          Defendants.

Case assigned to Biedscheid, Bryan

Cause No. D-101-CV-2019-03201

## COMPLAINT FOR WRONGFUL DEATH, LOSS OF CONSORTIUM, AND VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

Plaintiffs Lee Hunt, as the duly appointed personal representative of the wrongful death estate of Sallyann Ulibarri, and Diane Lopez, as the legal guardian of G. Ulibarri, a minor, through their attorneys of record at The Dinelli Law Firm, LLC (Mark P. Dinelli) and Atkins & Walker Law (Tyler J. Atkins), hereby file this complaint against the above-named Defendants for creating a dangerous environment at Siegel Suites Albuquerque and, despite overwhelming evidence of danger, failing to implement sufficient security measures to reasonably protect the safety and wellbeing of tenants, including Sallyann Ulibarri. In support of this complaint, Plaintiffs state as follows:

1

# EXHIBIT A

## PARTIES, JURISDICTION, AND VENUE

**Plaintiffs:**

1. On March 29, 2019, Plaintiff LEE HUNT was duly appointed as the Personal Representative of the Estate of Sallyann Ulibarri for the purpose of pursuing a cause of action for Ms. Ulibarri's wrongful death pursuant to the New Mexico Wrongful Death Act.

2. Plaintiff LEE HUNT is a resident and domiciliary of Santa Fe County, New Mexico.

3. Sallyann Ulibarri was the natural mother of G. ULIBARRI and was the legal guardian of G. ULIBARRI before she was killed.

4. Plaintiff DIANE LOPEZ is a resident and domiciliary of Bernalillo County, New Mexico.

5. Plaintiff DIANE LOPEZ is the natural mother of Sallyann Ulibarri and is the grandmother and current legal guardian if G. ULIBARRI.

**Defendants:**

6. Defendant THE SIEGEL GROUP NEVADA, INC. is a Nevada corporation that does business in New Mexico and maintains a statutory agent in Santa Fe County, New Mexico.

7. Defendant 75 HOTEL CIRCLE HOLDINGS, LLC d/b/a SIEGEL SUITES NEW MEXICO, LLC is a Nevada corporation that does business in New Mexico and maintains a statutory agent in Santa Fe County, New Mexico.

8. Defendant TAMMY KIMBALL is a resident and domiciliary of Bernalillo County, New Mexico.

9. Defendant TAMMY KIMBALL, at all times pertinent, was the General Manager of Siegel Suites Albuquerque, who was acting within the course and scope of her employment as an employee of The Siegel Group Nevada, Inc. and 75 Hotel Circle

2

Holdings, LLC d/b/a Siegel Suites New Mexico, LLC.

10. The events described in this complaint occurred in Bernalillo County, New Mexico.

11. This Court has personal jurisdiction over the parties.

12. This Court has subject matter jurisdiction over this matter.

13. Venue is proper in this Court.

## **PRELIMINARY STATEMENT**

Plaintiffs reallege and incorporate the preceding paragraphs herein.

14. As summarized in the Restatement (Second) of Torts, § 344, under the common law, "[a] possessor of land who holds it open to the public for entry for his [or her] business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons..., and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

15. Similarly, apartment/motel managers and operators have a duty to take all reasonable measures to reasonably protect the safety of their guests, including keeping guests safe from foreseeable criminal activity.

16. When apartment/motel operators know that criminal activity exists at their apartment/motel, they must:

   a. Ensure the safety of their guests; and

   b. Warn their guests of any potential dangers.

17. To protect guests from criminal activity, apartment/motel operators must ensure the following safety measures:

3

    a. Restricted access for apartment/motel guests only;

    b. Monitored security cameras in all public areas;

    c. Staff members trained to recognize and respond to criminal attacks;

    d. Trained security guards in sufficient numbers per shift to cover the entire premises and monitor the security cameras; and

    e. Adequate systems of communication between the personnel monitoring the security camera and the patrolling security guards.

18. If existing security measures do not prevent crime on the premises, then the apartment/motel must implement additional security precautions, such as adding additional security guards to monitor premises and security cameras, to reasonably protect their guests.

**Notice of Danger to Defendants:**

19. With increased knowledge of potential danger, so too increases the duty to prevent said danger.

20. For years before the assault in this case, Defendants knew that Siegel Suites Albuquerque, located at 75 Hotel Circle NE in Albuquerque, New Mexico, was a target for extensive criminal activity.

21. Despite repeated, extensive criminal activity Defendants failed to implement reasonable industry security standards.

22. In light of the Defendants' repeated failures, crime continued at Siegel Suites Albuquerque at alarming rates.

23. From 2014 to 2018, the Albuquerque Police Department ("APD") was called out Siegel Suites Albuquerque at least 1,421 times to investigate criminal activity ranging from physical abuse, aggravated assaults and batteries, vandalism, armed robberies, auto thefts, petty thefts,

drugs, and other types of criminal and suspicious activity.

24. Siegel Suites Albuquerque was so attractive to criminals that APD commonly found individuals with outstanding warrants at the Siegel Suites Albuquerque and conducted numerous tactical searches for individuals with outstanding warrants who were staying at Siegel Suites Albuquerque.

25. Based on the hundreds of visits that APD made each year to Siegel Suites Albuquerque, Defendants knew that Siegel Suites Albuquerque had a problem with crime that posed a danger to the safety of its guests.

26. Defendants knew that there were insufficient security measures in place to prevent crime and protect guests given the continued high rate of crime after their implementation.

27. Despite Defendants' knowledge of the high rate of crime at Siegel Suites Albuquerque, Defendants did not implement reasonable security standards to prevent these crimes, and did not hire designated trained individuals to conduct continuous monitoring of the security cameras to promptly and timely identify suspicious activity and send security guards as well as promptly notify police authorities to prevent the commission of crimes.

28. Defendants did not increase patrols of public areas or install additional security measures sufficient to reasonably ensure that potential criminal activity was intercepted and prevented.

29. Since Defendants refused to implement adequate security measures, crime continued unabated throughout 2014 to 2019, and guests suffered unnecessary crimes to their person and property.

**Sallyann Ulibarri:**

30. On December 2, 2018, Sallyann Ulibarri "checked in" at Siegel Suites Albuquerque.

31. During Sallyann Ulibarri's approximate four-week stay, Defendants were expressly aware of domestic disturbances caused by Orlando Johnson against Sallyann Ulibarri that occurred on the premises of Siegel Suites Albuquerque.

32. During Sallyann Ulibarri's stay, management of Siegel Suites Albuquerque, including Defendant Tammy Kimball, also noticed that Sallyann Ulibarri was consistently developing fresh bruising, cuts and associated injuries at the hands of Orlando Johnson.

33. Orlando Johnson disturbed and disrupted other tenants of Siegel Suites Albuquerque, which included threatening gestures, language and associated behavior, requiring intervention of hotel/apartment facility staff.

34. On January 6, 2019, Sallyann Ulibarri was brutally beaten to the point of unconsciousness at the hands of Orlando Johnson on the premises of Siegel Suites Albuquerque.

35. On January 8, 2019, Sallyann Ulibarri lost her life after succumbing to the injuries she received on January 6, 2019 on the premises of Siegel Suites Albuquerque.

### Count I
### Negligent and Reckless Security Resulting in Severe Injury and Death
### (*All* Defendants)

All previous paragraphs are incorporated herein as though set forth in full.

36. Defendants had a duty to protect Sallyann Ulibarri from foreseeable dangers and threats to her safety.

37. Defendant Tammy Kimball was the manager at the Siegel Suites Albuquerque and was acting within the course and scope of her employment at all times pertinent to this complaint.

38. Defendant Tammy Kimball had a duty to exercise ordinary care in keeping the premises of Siegel Suites Albuquerque reasonably safe for guests.

39. Defendants knew that Siegel Suites Albuquerque had high rates of criminal activity

that threatened guest safety.

40. Defendants knew that Orlando Johnson posed a threat to Sallyann Ulibarri's safety.

41. Despite the danger to their guests from criminal activity at the Siegel Suites Albuquerque, Defendants negligently, recklessly, or intentionally refused to implement security measures that would have prevented criminal activity from causing serious injury and death to Sallyann Ulibarri, including, but not limited to:

 a. Choosing not to have around-the-clock, real-time monitoring of security camera footage;
 b. Refusing to provide sufficient security personnel in light of the crime rate at the apartment/hotel facility;
 c. Inadequate training of Siegel Suites Albuquerque staff to limit access at the apartment/hotel facility and recognize and react to criminals on the premises;
 d. Failing to increase patrols of public areas to protect its guests from known risks of criminal activity and threats to safety; and
 e. Choosing not to have safe policies and procedures in place to protect the safety of tenants at Siegel Suites Albuquerque.

42. Defendants are directly liable for their failure to hire, train, supervise, and retain competent staff and security guards to provide security at the Albuquerque apartment/hotel facility.

43. Defendants collectively failed to properly assess the security risk and advise of the need for additional security measures, especially in light of the fact that existing levels of security had failed to curb criminal activity at the Siegel Suites Albuquerque.

44. Had Defendants implemented 24-hour real time monitoring of its video cameras,

7

implemented security patrol measures, trained the hotel/apartment employees and increased the frequency of patrols by staff and security at its facility of public places, then the Siegel Defendants would have seen and/or heard the perpetrator of Sallyann Ulibarri's assault before he harmed and eventually killed her.

45. There was a reasonable probability that if Defendants had complied with reasonable care and security standards given the criminal history of the property and surrounding parking lot, then its reputation as a place for criminal opportunity would have been reversed, and thus averting the likelihood of criminals seeking the property as an easy place to commit criminal activity.

46. Because Defendants did not implement such security measures, Sallyann Ulibarri's assaulter was emboldened to come upon the property and was able to easily enter her room, resulting in her prolonged, brutal assault and eventual death.

47. As a direct and proximate cause of Defendants' acts and omissions, Sallyann Ulibarri was killed.

48. Defendants are liable to Sallyann Ulibarri's estate for the full extent of wrongful death damages resulting from their acts and omissions.

49. Defendants are liable for the injuries and loss of life suffered by Sallyann Ulibarri based on their direct negligence in failing to provide adequate security, and under the theories of joint venture, vicariously liability, and *respondeat superior*, since all hotel/apartment personnel on duty that night were the employees, agents, and/or apparent agents of Defendants.

50. Defendants' violations, both singularly and cumulatively, reflect institutional recklessness, and thus, warrant punitive damages.

### Count II
### Loss of Consortium
### (*All* Defendants)

All previous paragraphs are incorporated herein as though set forth in full.

51. Before she was murdered, Sallyann Ulibarri was the legal guardian and sole caretaker for her minor son, G. Ulibarri, and had an extremely close, loving, intimate, and mutually dependent relationship with him.

52. It was foreseeable that G. Ulibarri would be harmed by the acts and omissions of Defendants that resulted in the death of his mother.

53. As a direct and proximate result of the acts and omissions of Defendants, G. Ulibarri lost the normal company and support of his mother forever and is entitled to recover damages to compensate him for his loss.

### Count III
### Violations of New Mexico's Unfair Trade Practices Act
### (*All* Defendants)

All previous paragraphs are incorporated herein as though set forth in full.

54. Defendants represented to the public that Siegel Suites Albuquerque possessed safe accommodations suitable for entire families looking for both short-term and long-term stays.

55. Despite these representations, Defendants knew that Siegel Suites Albuquerque had high rates of crime that threatened guest safety and inadequate security systems to protect guests, yet intentionally disregarded these issues, and refused to implement necessary security measures in order to generate greater and greater profits.

56. Defendants' knowing, willful, and intentional misrepresentations of the safety and quality of the accommodations at Siegel Suites Albuquerque are in direct violation of the New Mexico Unfair Trade Practices Act, NMSA 1978, §§ 57-12-1 through 57-12-20. These

misrepresentations include, but are not limited to:

    a. representing that its services had characteristics that they did not have;

    b. representing that its services were of a particular standard, quality, or grade when they were not of such standard, quality or grade;

    c. failing to provide the quality of services contracted for to Sallyann Ulibarri; and

    d. generating a gross disparity between the value received by Sallyann Ulibarri relative to the price she paid for the services provided.

57. Defendants' acts and omissions were direct and proximate causes of the injuries described above, and as the direct and proximate cause of these injuries, Defendants are liable to Plaintiffs for damages described in Counts I and II in addition to the damages specifically permitted under New Mexico Unfair Trade Practices Act, NMSA 1978, §§ 57-12-1 through 57-12-20, including treble damages and attorney fees and costs.

## **PRAYER FOR RELIEF**

Plaintiff requests that the Court enter a judgment against Defendants for compensatory damages, punitive damages, and treble damages amounts to be proven at trial, costs incurred in the prosecution of this action, pre- and post-judgment interest, attorney fees, and for such other and additional relief as the Court may deem proper.

    Respectfully submitted,

    _/s/ Mark Dinelli_
    Mark P. Dinelli
    The Dinelli Law Firm, LLC
    503 Slate Avenue NW
    Albuquerque, NM 87102
    Phone: (505) 582-2157
    Fax: (505) 393-5063
    Email: mark@dinellilaw.com

and

Tyler J. Atkins
Atkins and Walker Law
127 Bryn Mawr Drive SE
Albuquerque, NM 87106
Phone: (505) 508-4640
Fax: (505) 672-5119
Email: tyler@atkinswalker.com

*Attorneys for Plaintiffs*